United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Maria Ferrer, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 15-20877-Civ-Scola |
| | ) |
| Bayview Loan Servicing, LLC, and others, Defendants, | ) |

## **Order Granting Motion for Summary Judgment**

Pro se Plaintiff Maria Ferrer brought suit against the Defendants, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), the Florida Consumer Collections Practices Act § 559.72(9) ("FCCPA"), and the Telephone Consumer Protection Act 47 U.S.C. § 227 ("TCPA"), related to the servicing of her mortgage. (First Am. Compl., ECF No. 7 at ¶¶ 1-2.) This matter is presently before the Court upon the Defendants Bayview Loan Servicing, LLC and M&T Bank's Motion for Summary Judgment (ECF No. 110). Ferrer filed a response (ECF No. 141), and the Defendants filed a reply (ECF No. 150). The Court has considered all supporting and opposing submissions, the record in this case, and the applicable law. Accordingly, the Court **grants** the motion for summary judgment.

### **1. Background and Relevant Facts**

This action arises from the servicing of Ferrer's mortgage loan. Ferrer alleges that she received a letter on January 31, 2014, from her mortgage servicer, Chase, stating that her mortgage servicing would be transferred to M&T Bank within two weeks. (First Am. Compl., ECF No. 7 at ¶ 15.) On February 24, 2014, M&T sent Ferrer a letter informing her of the status of her accounts, and that they would provide the name of her original creditor on her mortgage loans and validate the debt, if she sent a written request. (Pl.'s Resp. to Statement of Material Facts ("Pl.'s Resp.") (ECF No. 143 at 11.) Around the same time, Bayview sent Ferrer a collection notice. (*Id.* at 14.)

Ferrer sent debt validation request letters in March of 2014[1] in response to debt notifications and collection notices from the Defendants. (*Id.* at 16-26.) Ferrer maintains that the Defendants did not respond, and the Defendants

---

[1] The letters attached to Ferrer's response are dated March 8, 2013, which she asserts is a scrivener's error. The Defendants do not appear to dispute the assertion, or that the letters were in fact sent in March of 2014, therefore, the Court accepts Ferrer's representation that her validation requests occurred in March of 2014.

continued collection efforts by calling Ferrer's cell phone number (305-785-8303) repeatedly, instituting a foreclosure action against her, and mailing collection notices every month. (*Id.* at 41-57; ECF No. 143 at ¶ 11.) Additionally, Bayview called her 53 times between February 21, 2014, and October 23, 2014—sometimes multiple times in one day. (Pl'.s Resp. at 59-62.)[2]

The Defendants do not dispute that they sent correspondence to Ferrer, (Am. Answer & Aff. Defenses, ECF No. 80 at ¶¶ 17-19), which included a response to her debt validation request (ECF No. 143 at Ex. H). Nor do they deny that they placed phone calls to Ferrer on her cell phone between April 24, 2014 and October of 2014, and they acknowledge that prior to that date, they placed calls concerning the debt to (305) 914-7994 ("94 number") between February 21, 2014 and April 24, 2014. (Defs.' Statement of Material Facts ("SOMF") ECF No. 111 at ¶ 16-18.) Ferrer disclosed her cell phone number on her Request for Mortgage Assistance, and identified her cell phone number as a best contact number. (*Id.* ¶¶ 14, 16; Pl.'s Resp. at ¶¶ 14, 16.) Ferrer does not dispute that the 94 number is a MagicJack phone number, which is not registered in her name. (*Id.* ¶ 18-19; Pl.'s Resp. at ¶¶ 18-19.)

Ferrer initially filed this action, alleging violations of the FDCPA (Count 1), the FCCPA (Count 2), and the TCPA (Count 3), while a foreclosure proceeding was taking place in the state court. The Court therefore stayed this action for almost two years while the foreclosure proceeding progressed through the state court system. (*See* ECF Nos. 62, 65.) The state court entered a final judgment of foreclosure in Bayview's favor in December of 2015. (ECF No. 92-1.) Ferrer challenged the judgment by filing appeals to the Third District Court of Appeal, the Florida Supreme Court, and the United States Supreme Court, all of which were denied or dismissed. (ECF Nos. 92-2, 92-3, 92-4.)

During the state foreclosure proceeding, Ferrer challenged the validity of the debt and the Defendant Bayview's right to enforce it or seek payments on it. (SOMF at ¶ 8.) Based upon the final judgment of foreclosure in the state proceeding, the Defendants previously sought dismissal of the instant case pursuant to the *Rooker-Feldman* doctrine, arguing that Ferrer cannot again attempt to challenge the validity of the underlying debt in this action. (ECF No. 92.) While the Court agreed that an attempted challenge to the validity of the underlying debt would be barred by preclusion principles, the Court ultimately denied the Defendants' motion because the *Rooker-Feldman* doctrine did not apply under the circumstances in this case. (*See* ECF No. 117.) Moreover, the Court found that Ferrer had alleged several violations of the FDCPA in the form

---

[2] In the amended complaint, Ferrer alleges that Bayview called her cell phone fifty-two (52) times. (First Am. Compl., ECF No. 7 at ¶ 28.)

of repeated telephone calls, the failure to disclose that communications were from a debt collector, and the failure to properly validate the debt after her requests, which did not require the Court to improperly undo the state foreclosure judgment. (*Id.*)

The Defendants now move for summary judgment.

## 2. Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260.

All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Id.* at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

## 3. Analysis

In support of their motion, the Defendants provide the declaration of Oscar Gutierrez, a Senior Contact Center Analyst – IT Global Services for Bayview (ECF No. 112), numerous filings from the underlying foreclosure

action, as well as Ferrer's request for mortgage assistance (ECF No. 111-8), excerpts from her deposition (ECF No. 111-9), responses to discovery requests (ECF No. 111-10), and email exchanges (ECF No. 111-11). In response, Ferrer has provided her own declaration, with copies of the correspondence sent by her to the Defendants and the responses, collection notices, excerpts of Bayview's call logs, a copy of the docket from the underlying foreclosure proceeding, the note and assignment of mortgage, and an affidavit of Joseph Parlade and various corporate documents concerning an entity named Home Loan Center, Inc. (ECF No. 143.)

The Defendants move for summary judgment arguing that Ferrer's FDCPA and FCCPA claims are barred by collateral estoppel, and that her TCPA claim fails because the Defendants did not use an auto-dialer, that any calls received on a line not owned by Ferrer are not actionable, and Ferrer consented to receive calls on her cell phone. The Court considers each argument in turn.

### A. Collateral estoppel

"The doctrine of collateral estoppel precludes a party from relitigating an issue that was fully litigated in a previous action." *Deweese v. Town of Palm Beach,* 688 F.2d 731, 733 (11th Cir. 1982). Collateral estoppel may be asserted by either a plaintiff or a defendant. *Id.* There are several requirements for applying the doctrine of collateral estoppel: (1) "the issue at stake [must] be identical to the one involved in the prior litigation"; (2) "the issue [must] have been actually litigated in the prior litigation"; and (3) "the determination of the issue in the prior litigation [must] have been a critical and necessary part of the judgment in that earlier action." *Id.* (quoting *Stoval v. Price Waterhouse Co.,* 652 F.2d 537, 540 (5th Cir. 1981)). The Defendants argue that Ferrer's FDCPA and FCCPA claims are barred by collateral estoppel because they are based upon Ferrer's theory that the Defendants were seeking to collect an invalid or non-existent debt. The validity of the debt, however, was determined in the underlying state foreclosure proceeding, in which the court entered a judgment against Ferrer.

As the Court previously indicated in its order on the motion to dismiss (*see* ECF No. 117), the Court agrees that to the extent that Ferrer's claims are premised upon the purported invalidity of the debt, such claims are barred by collateral estoppel, and the Court therefore will not engage in any inquiry regarding the validity of the underlying debt. Furthermore, because Ferrer's FCCPA claim is entirely premised upon the alleged invalidity of the underlying debt, summary judgment is proper upon that claim on the basis of collateral estoppel.

**B. No genuine issue of material fact remains regarding the FDCPA claim**

Even so, Ferrer contends that her FDCPA claim is premised upon the allegations contained in paragraphs 20 and 21 of the amended complaint, which do not attack the validity of the debt. Rather, as the Court understands Ferrer's allegations and argument, once Ferrer mailed her debt validation requests on March 8, 2014, the Defendants should have refrained from filing the state foreclosure action, and ceased their telephone calls and collection notices—and their failure to do so violated the FDCPA.

Setting aside the estoppel issue implicated in Ferrer's claim regarding the foreclosure proceedings, the commencement of foreclosure proceedings in May of 2014 did not violate the FDCPA. "[T]he plain language of § 1692g(b) does not extinguish a creditor's right to secure a debt under state law, but instead merely prohibits deceptive collection techniques." *Clark v. Shapiro & Pickett, LLP*, 452 F. App'x 890, 895 (11th Cir. 2012) (quoting *Shimek v. Weissman, Nowack, Curry & Wilco, P.C.*, 374 F.3d 1011, 1013 (11th Cir. 2004) (internal quotations omitted). As a result, Ferrer's debt collection claims upon this premise fail.

The parties expend ample time in their papers arguing the sufficiency of the response to Ferrer's request for debt validation that she sent to the Defendants on March 8, 2014. However, this claim is not pled in the amended complaint. As a pro se litigant, Ferrer is entitled to leniency, however, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citations omitted), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). Moreover, "there is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citing *Blue Cross & Blue Shiled v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990)).

Ferrer specifically alleged as part of her FDCPA claim, that the collection notices sent by the Defendants were intended to oppress or harass, and that the Defendants used false and misleading representations in their debt collection efforts. (First Am. Compl., ECF No. 7 at ¶¶ 45, 47.) Indeed, as pled, it is clear that the basis of Ferrer's FDCPA claim is her contention that the Defendants used prohibited practices in order to collect the alleged debt that was non-existent or invalid. For the reasons already discussed above, any challenge to the validity of the debt in this matter is barred by collateral estoppel. Moreover, Ferrer may not attempt to assert a new theory or claim that

the Defendants' response to her debt validation request was insufficient in response to the Defendants' motion for summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004).

Nevertheless, to the extent that Ferrer's FDCPA claim asserts that M&T did not provide any debt validation at all, *see* Am. Compl., ECF No. 7 at ¶ 52, such a claim would also fail because Ferrer admits that M&T Bank responded to her debt validation request on or about March 17, 2014. (ECF No. 143 at ¶ 11.) Under the FDCPA,

> [i]f the consumer notifies the debt collector in writing . . . that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b).

The record evidence demonstrates that on February 24 and 25, 2014, the Defendants sent Ferrer correspondence regarding her outstanding mortgage debt, and explaining the relationship between M&T Bank, the loan servicer, and Bayview, which was acting as M&T Bank's agent. (*See* ECF No. 143 at Exs. A & B.) In her letter response, Ferrer requested validation under the FDCPA from both Defendants.[3] (*See id.* at Ex. C.) In its response, M&T Bank enclosed a copy of the note executed by Ferrer, a breakdown of the amounts due on her loan, and identified her original lender, Home Loan Center, Inc. (*See id.* at Ex. H.)[4] The Defendants argue that this response was sufficient validation, while Ferrer maintains, without more, that it was insufficient to enable her to sufficiently dispute the payment obligation, relying upon *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785 (6th Cir. 2014). However, as previously stated, the sufficiency of the validation response is not

---

[3] Ferrer also sent the Defendants a "Qualified Written Request" under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, requesting specific information, including information about the assignment, sale, or transfer of her loan. (*See id.* at Exs. E, G.) However, there is no RESPA claim asserted in the amended complaint.

[4] As rebuttal, Ferrer appears to challenge whether the loan was in fact properly assigned by the original lender, Home Loan Center, Inc. The challenge is foreclosed by collateral estoppel.

properly before the Court, and in any event, the law binding upon this Court indicates that M&T Bank's response was sufficient. *See Madura v. Lakebridge Condo. Assoc., Inc.,* 382 F. App'x 862, 865 (11th Cir. 2010) (a current statement sent by the alleged debt collector was sufficient for verification of debt).

In addition, Bayview responded to Ferrer's Qualified Written Request and/or validation letter (which were dated the same day), specifically addressing her concerns about the transfer or assignment of her loan, (*see* ECF No. 143 at Ex. L), though Ferrer contends that the response was belated. Indeed, Ferrer makes much about the timing of her allegations regarding the Defendants' debt collection efforts; however, Ferrer does not dispute that M&T Bank responded within ten (10) days of her letter, nor has she provided any evidence that the Defendants sent improper collection notices prior to the response to Ferrer's debt validation, or that the phone calls placed to her prior to the validation response were improper. *See Saltzman v. I.C. Sys., Inc.,* No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009) ("[A] debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages."). Thus, summary judgment upon Ferrer's FDCPA claim is proper.

### C. TCPA claims

Bayview argues that it is entitled to summary judgment upon Ferrer's TCPA claim because Ferrer is not entitled to relief for any calls received through the 94 number, which she does not own, none of the calls made to her cell phone were made with an automatic telephone dialing system ("ATDS"), and Ferrer gave consent to receive calls to her cell phone from February 21, 2014 through May 20, 2014, when she revoked consent. In support of their arguments, the Defendants rely primarily upon the declaration of Oscar Gutierrez, a Senior Contact Center Analyst – IT Global Services, at Bayview (ECF No. 112), and excerpts from Gutierrez's deposition (ECF No. 50-1).

Rather than respond in substance to Bayview's arguments, Ferrer attacks the sufficiency of Gutierrez's declaration, arguing that he relies upon documents, records, and systems that have not been authenticated. She therefore objects to the declaration on the basis of hearsay under Rule 56(c)(2), though she does not otherwise indicate why or what specific materials Gutierrez relied upon that are objectionable. Under Rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Gutierrez's declaration satisfies these requirements. In the declaration, Gutierrez states that he is an employee of Bayview, and attests that the information he provides is based upon his personal knowledge gained through his employment of the telephonic hardware and software systems used in the course of Bayview's business, and review of relevant business records and specific electronic information related to Ferrer's account, for which there is a specific hearsay exception. *See* Fed. R. Evid. 803(6). Therefore, Ferrer's objection is without merit.

She also asserts that many of the statements made in the declaration are directly contradicted by Gutierrez's deposition testimony. However, upon review of the relevant testimony, the Court disagrees. Therefore, the Court considers Gutierrez's declaration.

### i. Bayview did not violate the TCPA by calling the 94 number

The TCPA makes it unlawful to call, other than for emergency purposes or with prior consent, "any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). Thus, one of the main requirements for protection under the statute is that the called party be charged for the call.

First, the Court notes that the amended complaint contains no allegations concerning, and asserts no claim with respect to, the 94 number. For the reasons already stated in the Court's discussion regarding the impropriety of attempting to amend claims in response to summary judgment, Ferrer's attempt to assert any claim with respect to a phone number other than the one specifically alleged in the amended complaint is improper. However, even assuming the claim was proper, Bayview would be entitled to summary judgment, based upon Ferrer's admission that the 94 number (a MagicJack number) is not registered to her and she was not a subscriber during the relevant timeframe. (*See* SOMF at ¶¶ 18-19; Pl.'s Resp. at ¶¶ 18-19.) Thus, Ferrer is not a called party charged for the call under the statute. Moreover, Ferrer has produced no evidence to contradict Gutierrez's assertion that although Bayview did attempt to contact Ferrer at the 94 number prior to April 24, 2014, Bayview did not attempt to contact Ferrer on her cell phone on any date prior. (ECF No. 112 at ¶ 18.) Therefore, Bayview is entitled to summary judgment upon Ferrer's TCPA claim with respect to any telephone calls prior to April 24, 2014.

### ii. Bayview did not use an ATDS

Bayview is also entitled to summary judgment upon the remainder of Ferrer's TCPA claim because there is no genuine issue of material fact with

respect to whether Bayview used an ATDS to place calls to Ferrer's cell phone. The TCPA makes it unlawful to call a cell phone using an automatic telephone dialing system or prerecorded voice. 47 U.S.C. § 227(b)(1)(A). Thus, to make a claim under the TCPA, a plaintiff must show that "(1) a call was made to a cell or wireless phone, (2) by the use of any automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party." *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1253 (M.D. Fla. 2012). The TCPA defines an ATDS as equipment that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator *and* dial the stored numbers. 47 U.S.C. § 227(a)(1).

In his declaration, Gutierrez asserts that the forty-four remaining (44) calls that Bayview placed to Ferrer's cell phone during the timeframe alleged in the amended complaint were placed through the Avaya X1 Platform, which operates separately from Bayview's servicing platform, and does not store telephone numbers. (ECF No. 112 at ¶¶ 20-22, 24.) Furthermore, Gutierrez asserts that the primary function of the Avaya Platform is to permit a user to dial phone calls using a computer keyboard and mouse, and that the calls must be manually dialed. (*Id.* at ¶¶ 23, 25.) In fact, the Avaya Platform cannot place calls without human input, and it is not able to dial predictively, store, or produce telephone numbers independently. (*Id.* at ¶¶ 27, 29.) The statements in Gutierrez's declaration are consistent with his deposition transcript excerpts provided by both parties.[5]

In response, Ferrer asserts that Gutierrez also admitted that Bayview utilized a system called Presence, which is an auto-dialer, to execute certain outbound campaigns. Gutierrez also admitted during his deposition that some calls placed to Ferrer was dialed by an auto-dialer. (*See* ECF No. 144 at 11, 18-19.) However, the calls were placed to numbers other than Ferrer's cell phone (the 94 number and 305-454-9360), which are not alleged to be numbers subject to the TCPA in this case. The mere fact that Bayview utilizes an auto-dialer in some instances does not subject Bayview to TCPA liability in this case, absent evidence that the auto-dialer was used to contact Ferrer on her cell phone in a manner prohibited by the TCPA. There is no such evidence in the record. Accordingly, Bayview is entitled to summary judgment.

### iii. Prior consent

As stated above, the unrebutted record evidence indicates that prior to April 24, 2014, Bayview placed no calls to Ferrer's cell phone number. In

---

[5] A portion of Ferrer's questioning of Gutierrez at his deposition revolved around call logs presumably provided by Bayview in discovery; however, the call logs have not been filed of record for the Court's consideration.

addition, the forty-four (44) remaining calls to her cell phone were not placed with an auto-dialer, which Ferrer also has not rebutted. Therefore, the Court need not consider whether Ferrer gave prior express consent.

### 4. Conclusion

For the foregoing reasons, the Defendants' motion for summary judgment (**ECF No. 110**) is **granted**. The Court will enter final judgment by separate order. Any remaining motions are **denied as moot**, and the Clerk of Court shall **close** this case.

**Done and ordered** at Miami, Florida, on January 25, 2018.

*[signature]*

Robert N. Scola, Jr.
United States District Judge